J-S44036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                      :                PENNSYLVANIA
                                        :

              v.                       :
                                        :

RODNEY FERRER                     :
                                        :

            Appellant            :       No. 978 EDA 2024

Appeal from the PCRA Order Entered March 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000926-2021

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                **FILED MARCH 25, 2025**

Rodney Ferrer ("Ferrer") appeals from the order dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In 2020, Ferrer, a registered sex offender, spent the night in Philadelphia at the home of his wife's granddaughter, who was twelve years old, and digitally penetrated her anus by forcible compulsion without her consent.  In 2021, Ferrer entered a negotiated guilty plea to aggravated indecent assault of a child, unlawful contact with a minor, and indecent assault of a person less than thirteen years of age.  On February 14, 2022, the trial court sentenced Ferrer to ten to twenty years in prison, followed by five years of probation.  Ferrer did not file a post-sentence motion or a direct appeal.

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

On November 16, 2022, Ferrer filed a timely *pro se* PCRA petition.[2] The

PCRA court appointed counsel, who filed an amended petition. Therein, Ferrer

claimed that his plea counsel, Scott Sigman, Esquire ("Attorney Sigman"), was

ineffective for failing to file a direct appeal. The PCRA court conducted an

evidentiary hearing at which both Ferrer and Attorney Sigman testified. The

PCRA court summarized the testimony and evidence presented at the

evidentiary hearing as follows:

> First, [Ferrer] testified that he recalled being asked by [Attorney] Sigman at [the] sentencing hearing whether [Ferrer] wanted [Attorney] Sigman to file an appeal on [Ferrer's] behalf. [*See*] N.T.[,] 12/1/23[,] at 7. [Ferrer] admitted that he responded, "No." *Id*. [Ferrer] claimed he did not recall why he said "no" and further claimed that he "didn't really know what it was about" and "didn't understand it." *Id*. [Ferrer] further testified that he subsequently changed his mind and wrote a letter to [Attorney] Sigman requesting his discovery and an appeal. *Id*. at 7-8. [Ferrer] identified . . . Exhibit A as the letter he sent to [Attorney] Sigman. *Id*. at 8-9; . . . Exhibit A. [Ferrer] testified he wrote the letter five days after his sentencing hearing on February 19, 2022, while in the county prison in Philadelphia, and that he mailed it to [Attorney] Sigman. [*See*] N.T.[,] 12/1/23[,] at 9. . . . Exhibit A includes no copy of an envelope or postmark. . . . [Ferrer] also testified that he never heard back from [Attorney] Sigman. [*See*] N.T.[,] 12/1/23[,] at 9.

_____

[2] As Ferrer did not file a post-sentence motion, he had thirty days from the entry of his judgment of sentence, until March 16, 2022, in which to file a direct appeal. *See* Pa.R.A.P. 903(a). As Ferrer did not file a direct appeal, his judgment of sentence became final when the period in which to file such an appeal expired. *See* 42 Pa.C.S.A. § 9545(b)(3). Ferrer then had one year from that date, until March 16, 2023, in which to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1) (providing that a PCRA petition must be filed within one year of the date the judgment of sentence becomes final). Thus, the instant petition, filed on November 16, 2022, is timely.

On cross examination, [Ferrer] admitted that he never followed up with [Attorney] Sigman regarding his letter requesting an appeal. *Id*. at 21. [Ferrer] also testified that he never followed up with the Superior Court regarding an appeal. *Id*. When asked how he found out that an appeal had not been filed, [Ferrer] testified that he had never learned whether an appeal had been filed but "just went ahead and got help from the state inmate with the PCRA." *Id*. at 22.

When asked if he had a copy of the letter to [Attorney] Sigman requesting an appeal, [Ferrer] produced what he described as the original letter. *Id*. at 17. The document had "Exhibit A" written at the top, as does . . . Exhibit A. *Id*. at 17-18. When asked why he wrote "Exhibit A" on top of a letter to his lawyer, [Ferrer] testified that an inmate told him to do so. *Id*. at 18. [Ferrer] further clarified that the same state inmate who helped with the PCRA was the person who told [him] to write "Exhibit A" on top of the letter. *Id*. at 24.

[Ferrer] recalled being advised by [the trial court] of the limited appellate rights he would have by pleading guilty. *Id*. at 10-11. [Ferrer] further testified that, after he entered his negotiated guilty plea, he told [Attorney] Sigman he wanted to withdraw the plea, and [Attorney] Sigman filed a motion to withdraw the plea . . .. *Id*. at 15. [Ferrer] testified that he later changed his mind and decided he wanted to keep the guilty plea, and that [Attorney] Sigman withdrew the motion to withdraw the guilty plea at [Ferrer's] request. *Id*. at 16.

Next, [Attorney] Sigman testified that he did not recall ever receiving a letter from [Ferrer], and that he did not see any letters from [Ferrer] in his case file. *Id*. at 29. [Attorney] Sigman testified that during his representation with [Ferrer], they communicated face-to-face, on the telephone, or through [Ferrer's] personal friend, Kathy. *Id*. at 28. [Attorney] Sigman stated that he had no notes of anyone telling him verbally or in writing that [Ferrer] wanted [Attorney] Sigman to file a direct appeal. *Id*. at 33. [Attorney] Sigman never received a letter from [Ferrer] requesting an appeal. *Id*. [Attorney] Sigman testified that he would have happily filed a notice of appeal if [Ferrer] had asked him to do so. *Id*. at 33-34. [Attorney] Sigman further noted that, as court-appointed counsel, [Attorney] Sigman would have been compensated for an appeal and that it would not have cost [Attorney] Sigman anything to file an appeal. *Id*. at 34.

[Attorney] Sigman further testified that, when [Ferrer] wanted [Attorney] Sigman to withdraw his guilty plea earlier in the case, [Ferrer] communicated that request both personally by telephone and through [Ferrer's] friend, Kathy. *Id*. at 31.

PCRA Court Opinion, 5/28/24, at 4-5. The PCRA court credited the testimony of Attorney Sigman and determined that Ferrer's claim that he mailed a letter to Attorney Sigman asking him to file an appeal was not credible. Accordingly, on March 1, 2024, the PCRA court entered an order dismissing the petition. Ferrer filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Ferrer raises the following issue for our review: "Whether the PCRA court erred when it [dismissed] . . . Ferrer's claim that [plea] counsel was ineffective for not filing an appeal in this matter." Ferrer's Brief at 5.

Our standard of review of an order dismissing a PCRA petition is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

- 4 -

Under Pennsylvania law, counsel is presumed to be effective, and it is the petitioner's burden to prove otherwise. *See Commonwealth v. Reid*, 99 A.3d 427, 435 (Pa. 2014). In order to obtain collateral relief based on the ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below accepted standards of advocacy and that, as a result thereof, the petitioner was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

The Pennsylvania Supreme Court has held that where there is an "unjustified failure to file a requested direct appeal," counsel is deemed *per se* ineffective. *Commonwealth v. Lantzy*, 736 A.2d 564, 572 (Pa. 1999) (footnote omitted). However, while "counsel may be ineffective for failing to file a direct appeal on his client's behalf, a PCRA petitioner must prove that he asked counsel to file an appeal in order to be entitled to relief." *Commonwealth v. Maynard*, 900 A.2d 395, 397-98 (Pa. Super. 2006) (citation omitted). "Mere allegations will not suffice." *Commonwealth v. Harmon*, 738 A.2d 1023, 1024 (Pa. Super. 1999). Instead, the petitioner has the burden of proving that he requested a direct appeal and that his counsel heard but ignored or rejected the request. *See Maynard*, 900 A.2d at 397-98.

Ferrer claims that he was denied his constitutionally guaranteed right to effective representation when Attorney Sigman failed to file a timely notice of appeal after being specifically requested by Ferrer to do so. Ferrer concedes

that he initially told Attorney Sigman at the sentencing hearing that he did not want to file a direct appeal. However, Ferrer claims that he later changed his mind and wrote a letter to Attorney Sigman requesting that he file an appeal. Ferrer points out that he testified to and produced a copy of the purported letter at the evidentiary hearing and, therefore, provided credible testimony and documentary evidence that he requested an appeal from Attorney Sigman. Ferrer acknowledges that he marked the top of the purported letter with the designation as "Exhibit A" because another prison inmate told him to do so prior to attaching it to his PCRA petition. Ferrer additionally claims that, as an incarcerated individual, he did not have knowledge of or control over what happened to his letter when it left his possession, and it would be impossible to obtain this information.

The PCRA court considered Ferrer's issue and concluded that it lacked merit. The court reasoned:

> The testimony of [Ferrer] was not credible based on the substance of his testimony and his demeanor while testifying. More specifically, the court rejected as incredible [Ferrer's] testimony that he had written a letter to [Attorney] Sigman asking him to file a direct appeal. [Ferrer's] credibility was undermined in several ways, including by his admission that he had never made any efforts to find out whether or not [Attorney] Sigman had filed an appeal before proceeding with his PCRA petition. [Ferrer] also failed to offer any credible explanation for why he never attempted to communicate with [Attorney] Sigman about an appeal by telephone or through his friend, Kathy, which was how he had communicated with [Attorney] Sigman during the history of the case. Moreover, no records of any letters from defendant to [Attorney] Sigman were found in [Attorney] Sigman's case file, and [Attorney] Sigman did not recall ever

receiving any letters from [Ferrer]. Accordingly, the court found that [Ferrer] never asked [Attorney] Sigman to file an appeal.

The testimony of [Attorney] Sigman was credible based on his demeanor while testifying and the substance of his testimony. [Attorney] Sigman's testimony established that if [Ferrer] had asked [Attorney] Sigman to file an appeal, either orally or in writing, then [Attorney] Sigman would have responded to [Ferrer's] request in an appropriate fashion.

Accordingly, the record establishes that [Attorney] Sigman was not ineffective for failing to file a direct appeal of [Ferrer's] guilty plea because [Ferrer] never requested [Attorney] Sigman to do so. As a result, [Ferrer's] claim in his PCRA petition that plea counsel was ineffective is without merit.

PCRA Court Opinion, 5/28/24, at 6 (citations and unnecessary capitalization omitted).

Based on our review, we conclude that the PCRA court's ruling is supported by the record and free of legal error. As explained above, this Court grants great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *See Ford*, 44 A.3d at 1194. Here, Ferrer had the burden of proving that he requested a direct appeal and that Attorney Sigman heard, but either ignored or rejected the request. *See Maynard*, 900 A.2d at 397-98. The PCRA court credited the testimony of Attorney Sigman that Ferrer initially told him that he did not want to file a direct appeal, and that Attorney Sigman never received any correspondence from Ferrer indicating that he had changed his mind. Although Ferrer testified that he sent a letter requesting an appeal to Attorney Sigman five days after the sentencing hearing and produced a copy of the

purported letter, the PCRA court doubted the authenticity of that testimony and the document, noting that Ferrer failed to produce any indicia of authenticity for the letter, such as an envelope or a postmark, and that throughout the course of the underlying criminal proceedings, Ferrer had never sent Attorney Sigman a letter, and instead communicated with him in person, via telephone, or used his friend, Kathy, as an intermediary. As explained above, "mere allegations" that a petitioner asked counsel to file an appeal will not suffice. **See Harmon**, 738 A.2d at 1024. Given that the record supports the PCRA court's determination that Ferrer did not establish that the letter was ever sent to Attorney Sigman, we conclude that Ferrer failed to prove that he asked Attorney Sigman to file an appeal. Thus, as the record supports the PCRA court's determination that counsel was not ineffective, we affirm the order dismissing Ferrer's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/25/2025